IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MOHAMMED ABEDI,

        Plaintiff,                     No. CIV S-06-0991 MCE GGH P

        vs.

D.K. BUTLER, et al.,                  ORDER

        Defendants.

_____/

Introduction

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Currently pending before the court is 1) plaintiff's request to proceed upon a second amended complaint, filed on 6/24/08, along with a proposed second amended complaint, filed on 6/25/08, to which defendants filed their opposition, after which plaintiff filed a reply; 2) plaintiff's 7/11/08, motion for sanctions for defendants' failure to cooperate in discovery, opposed by defendants; thereafter, plaintiff filed an "addendum"; 3) plaintiff's request for issuance of a subpoena for production of documents for service upon Matthew Cate, Secretary of California Department of Corrections and Rehabilitation (CDCR), filed on 3/23/09; 4) plaintiff's motion to vacate the taking of his deposition, filed on 3/24/09.

Background

        The original complaint in this action was filed nearly three years ago, on 5/05/06, without either an in forma pauperis affidavit or the required filing fee. On 6/02/06, plaintiff paid

1

a portion of the filing fee. By Order, filed on 6/23/06, plaintiff was directed to submit a declaration making the requisite showing to proceed in forma pauperis under 28 U.S.C. § 1915(a) or to pay the remainder of the full filing fee; plaintiff subsequently paid the filing fee in full. By Order, filed on 10/24/06, plaintiff's complaint was dismissed with leave to file an amended complaint; plaintiff was granted an extension of time to file an amended complaint. By Order, filed on 6/15/07, the court found plaintiff's claims in the amended complaint against defendants D.K. Butler; W. Parker; A. Groner; J. Mineau; T. Pebler; H. Carreon; C. Martincek colorable and directed plaintiff to complete service of process in accordance with Fed. R. Civ. P. 4, but afforded plaintiff one further opportunity therein to make the requisite showing for in forma pauperis status, so that the court might be able to direct the U.S. Marshal to serve the amended complaint, assuring plaintiff that he would not be assessed any further filing fee.

Plaintiff's request to pay for the services of the U.S. Marshal to be his process server was disregarded, and plaintiff's improperly submitted documents, including the summons and copies of his amended complaint were returned to plaintiff. Orders, filed on 7/30/07, and 7/31/07. By Order, filed on 8/14/07, plaintiff's 8/06/07 application to proceed in forma pauperis was denied based on the court's review of the amount of funds in his prison trust account; plaintiff's request for an extension of time to serve the defendants was granted.

On 12/13/07, defendants Pebler, Carreon, and Martincek, having been granted an extension of time to do so,[1] filed their answer to the first amended complaint. Plaintiff's request for an extension of time to serve the remaining defendants, Butler, Parker, Groner and Mineau was granted by Order filed on 12/18/07. Defendant Mineau filed an answer to the first amended complaint on 1/31/08.

In an Order, filed on 3/10/08, plaintiff was granted an additional 90 days to complete service of process upon defendants Butler, Parker and Groner, and was cautioned in

---

[1] See Order, filed on 11/26/07.

2

that order that there would be no further extension of time.

By Order, filed on 5/20/08, noting to that date four of the seven named defendants had been served and that plaintiff's attorney in unrelated matters had informed the court that plaintiff pro se had been separated from his legal papers since 4/09/08, due to apparently having been placed in administrative segregation for his own protection and due to be transferred, the court directed defendants' counsel to assist in locating the unserved defendants. In that Order, the court further observed that, although having liberally granted plaintiff extensions of time to serve process cognizant of the hurdles faced by an incarcerated person seeking to serve his own summons and complaint, that, nevertheless, "there comes a point when delays become an untenable impediment to the judicial process." Order, filed on 5/20/08, p. 2. The court further asserted that any unserved defendants which defendants' counsel could not locate would be subject to dismissal pursuant to Fed. R. Civ. P. 4(m).

By Order, filed on 7/29/08 (docket # 48), noting that the court had been informed that plaintiff had previously sought the addresses of unserved defendants by way of discovery, that defendants' counsel, subsequent to the 5/20/08, Order had informed the court that CDCR representative D. Johnson at California State Prison - Folsom (FSP) had, at all relevant times, been authorized to accept service of process on defendant Butler's behalf, and that, moreover, defendants Parker and Groner, retired from CDCR, were willing to allow Folsom to accept service of process of this action on their behalf, as well. The order also noted the defendants' request that the U.S. Marshal be directed to serve the summons and complaint upon the three defendants in care of FSP's litigation coordinator, and the 6/19/08 declaration by plaintiff that his process server had contacted FSP but could not ascertain the location of the unserved defendants. In that order, as well, it was noted that plaintiff had filed a motion for leave to file a second amended complaint on 6/24/08, and a proposed second amended complaint on 6/25/08, and that, also on 6/25/08, defendants had requested a screening order. The court denied the request, directing defendants to respond substantively to the motion and proposed second amended

3

complaint, either by opposition or statement of non-opposition.

In a separate Order, also filed on 7/29/08 (# 49), the court directed the U.S. Marshal to serve process on defendants Parker, Groner and Butler. Waivers of service of process were filed on behalf of these defendants on 9/15/08, and finally, on 9/24/08, defendants Parker, Groner and Butler filed their answer to the first amended complaint, nearly two and a half years after the inception of this action.

First Amended Complaint

Plaintiff describes himself as 65 years old, serving a life term, and being of Iranian descent. At the time of the filing of this action and of the filing of the first amended complaint, plaintiff was housed at CSP-Folsom (FSP). As noted previously, the seven named defendants are D.K. Butler; W. Parker; A. Groner; J. Mineau; T. Pebler; H. Carreon; C. Martincek. Defendant Butler is the FSP warden; defendant Parker at the time was employed at Folsom, as was defendant Groner, who was employed as an electronic technician. Defendants also include J. Mineau, an FSP Correctional Sergeant; Pebler and Martincek, two FSP Correctional Officers; Martincek. Defendant Carreon is an FSP electrician shop supervisor. In other words, all defendants are or were employed by CDCR at FSP. First Amended Complaint, hereafter AC, pp. 2-3.

Plaintiff complains that the defendants were engaged in a conspiracy over a period of time to discriminate, harass and retaliate against plaintiff. Plaintiff begins by referencing an incident that apparently occurred while plaintiff was housed at Corcoran State Prison (CSP) from 1991-1995 before being transferred to FSP. While at CSP, plaintiff spent 4 years as the R&R clerk, where he "was known throughout Facility A as one of the more efficient inmate clerks." At that time, the program administrator there was defendant J. Mineau's brother. Plaintiff was lead clerk in R&R when defendant Mineau's brother asked plaintiff to be his personal clerk, but plaintiff told him that he was not interested in the position as Mineau's brother was known to mistreat his clerks, which remarks by plaintiff upset him, whereupon he told plaintiff that he

would regret his refusal and his remark. As a result, plaintiff was later transferred to Facility B and became the Building 5 (or 4, plaintiff is unclear on this point) counselor's clerk, after which Mineau's brother caused plaintiff to lose that job. AC, pp. 3-5.

Following plaintiff's subsequent transfer to R.J. Donovan from 1995 until 1999, plaintiff was transferred to FSP; after meeting plaintiff, defendant Mineau, while R&R sergeant offered plaintiff a clerk job there, but plaintiff claimed that he had had a bad experience with his brother and that he "was probably just like his brother, so he was not interested in working for another Mineau." Defendant Mineau, infuriated, told plaintiff he would regret refusing the job and making the statement about him and his brother. Quarterly packages are processed in defendant Mineau's job location in R&R. Thereafter, plaintiff's daughter sent him a quarterly package containing items, including jewelry making items, which is not allowed in such packages, apparently since FSP did not have an active hobbyshop program at the time; thus, plaintiff planned to return them. When, after several months of waiting and checking with R&R staff without receiving the package, plaintiff asked his daughter to track the package, after which his daughter informed him that the package had been delivered more than a month previously. AC, pp. 5-6.

When plaintiff told R&R staff, including defendant Mineau, that their refusal to give him his package violated his rights and that he intended to file a grievance, in retaliation, on 12/14/02, defendant Mineau, failing to get authorization by the unit captain or lieutenant, personally searched plaintiff's cell for more than two hours, although it had been searched two weeks earlier per routine unit procedure, and even though the regular tier officer who conducts cell searches volunteered to do so. Mineau confiscated items without providing plaintiff a receipt per regulation and told plaintiff that if he wanted his quarterly package, he would have to bring a lieutenant with him. AC, pp. 6-7.

When plaintiff received a ducat, on 12/24/02, to retrieve his package from R&R, he was told they were closed; he was re-ducated for 12/27/02, and was again turned away.

5

Finally, on 12/28/02, plaintiff was able to see his package but saw that it had been opened outside his view and, not trusting Mineau because of the harassment and retaliation, told R&R staff he did not want to take responsibility for it and to return it to the sender, signing a trust withdrawal to pay for the return, despite R&R's staff efforts to have him accept the package. AC, p. 7.

Plaintiff claims that R&R staff again asked him to take the package on 12/29/02; defendant Mineau, on 12/30/02, told plaintiff to sign for the package and inventory its contents and only then could it be returned, but plaintiff explained he would not do so as the package had been opened without him and he could not be sure it had not been tampered with. Associate Warden Bunnell (not a defendant) told plaintiff, also on 12/30/02, that he would ask defendant Mineau to return the package to plaintiff's daughter; however, on both 12/31/02 and 1/02/03, he was again called to get his package from R&R. On 1/03/03, plaintiff explained to Mr. Bunnell that the problem had not resolved, whereupon plaintiff believes defendant Mineau was ordered by the associate warden to send the package back and if there was problem with the items that a CDC-128-B chrono should be sent to plaintiff about it. AC, pp. 8-9.

On 1/07/03, defendant Mineau issued an adverse chrono, indicating that unauthorized items had been removed from plaintiff's package and wrongly stating that under Cal. Code Regs. tit.xv, § 3191(c),[2] plaintiff does not have a right to send home items at his expense or to donate them to charity. The items confiscated, including valuable gold, were supposedly disposed of putatively in violation of Cal. Code Regs. tit.xv, § 3191(c). Defendant Butler, on 8/13/03, despite being made aware of Mineau's retaliatory and discriminatory actions failed to stop the defendants continuing violations of plaintiff's constitutional rights. AC, p. 9.

Plaintiff, who claims that he is the only inmate of Middle Eastern descent assigned to FSP's electrical maintenance shop, states that he received the assignment to shop, which is in the lower yard, on 5/22/02. Being assigned to the lower yard requires plaintiff to go

---

[2] This subsection governs the manner of disposition of personal property that is not allowed to state prisoners.

6

up and down many steep steps and in November of 2002, plaintiff told defendant Carreon about his difficulties climbing and going down the steps and asked to be assigned to one of the number of available electrical positions in the upper (or main) yard. Defendant Carreon told plaintiff that he would assign plaintiff to one when it was available and that other inmates with medical conditions had them. On 2/04/03, plaintiff was issued a medical chrono by non-defendant Dr. Cardeno stating that he was not to have a job assigned which required him to climb more than 30 steps at a time (which the lower yard assignment does require). AC, p. 10.

Plaintiff's counselor told defendants Groner and Parker about the medical working restriction, after which plaintiff, in a meeting, was told by defendant Carreon, that he was to be assigned to the main yard position previously held by inmate Vasquez, P-74300. Defendant Carreon asked plaintiff to drop his grievances against defendant Mineau at the meeting. Plaintiff contends at around 2/13/03, because of plaintiff's Middle Eastern ethnicity and his refusal to drop his grievances against defendant Mineau, defendants Groner, Parker and Carreon, with unnamed other supervisors, decided not to assign plaintiff a main yard position, telling him it was because the three main yard positions were to be deactivated. AC, p. 11.

Plaintiff maintains that none of the positions have since been deactivated and he names a number of inmates who he says had the electrician job assignments on the main yard to accommodate their medical disabilities. Defendant Groner sought to have plaintiff removed from his job assignment ostensibly due to his medical condition on 7/13/03,[3] despite plaintiff's having reported to work on several days in February even after receiving the medical chrono. Plaintiff filed a grievance on 2/25/03, which was inadequately investigated by defendant Butler and denied. Plaintiff asserts that other inmates requests for main yard positions to accommodate a medical disability have been granted. AC, p. 12.

---

[3] This date appears to be erroneous, as plaintiff later states that he was removed by the Unit Classification Committee from his work assignment, on 4/17/03, as a result of defendant Groner's request, which could not have occurred three months *afterward*.

7

On 2/10/03, plaintiff asked defendant Pebler to send out three boxes of legal documents addressed to his attorney that plaintiff took to the R&R annex with third class postage, the cheapest postal rate. Defendant Pebler stated that he would do so but, on 2/13/03, failed to do so as part of an ongoing conspiracy to retaliate and discriminate against and harass plaintiff. Plaintiff's boxes, none of which weighed more than 30 pounds, were mailed out by UPS for $101.15, even though plaintiff had sent out a box which weighed 30 pounds for only $7.42. When plaintiff filed a grievance on 6/18/03, seeking a refund of the difference in the cost he was charged and the third class mail rate, defendant Butler denied the grievance, again not stopping defendants' actions. AC, pp. 12-13.

On 7/11/03, defendant Martincek inspected plaintiff's quarterly package for unauthorized items, and because he was also involved in the conspiracy to retaliate against plaintiff for filing grievances against defendant Mineau, his immediate supervisor, illegally confiscated a number of items as unauthorized, even though all items were authorized by the package guidelines. Plaintiff was forced to choose between sending the items home or donating them. Plaintiff filled out a trust withdrawal saying that it should not be processed until his grievance was final, which he filed on 7/12/03. Nevertheless, the items were sent back to his family on 7/15/03, and defendant Butler on 8/19/03, denied the grievance, despite being aware of defendants continuing actions. AC, p. 14.

Plaintiff alleges violations of his rights under the First Amendment by the retaliation by defendants for his filing grievances, and equal protection and due process violations under the Fourteenth Amendment for the manner of their disposition and processing of his property and their failure to accommodate his medical disability in a job assignment. Plaintiff seeks money damages. AC, pp. 16-17.

<u>Request for Leave to file Second Amended Complaint</u>

Plaintiff seeks leave to proceed on a second amended complaint wherein he adds claims and defendants "based on additional instances of retaliatory action related to the facts and

8

the claims of this proceeding." Motion, p. 1 (the only page of the motion). In the second amended complaint, plaintiff incorporates the claims of the first amended complaint, but adds several new defendants and incidents. Second Amended Complaint (SAC), pp. 1-24. In opposition, defendants filed a notice of related case, indicating that plaintiff is presently pursuing relief in state court based on the event identified as "incident no. 5" in the proposed second amended complaint involving a "mutual combat" incident with an inmate Arreola. Notice, filed on 7/21/08. In incident no. 5 of the proposed SAC, plaintiff alleges that he was wrongly found guilty of a disciplinary violation because (new) defendant Evans also retaliated against him in collusion with defendant Mineau in alleging an incident of mutual combat by plaintiff; plaintiff also seeks to name a new defendant named Kramer related to this incident as well. SAC, pp. 16-18. Plaintiff was found guilty on 2/17/06, and evidently thereafter filed his grievance. Id., at 18. Plaintiff asserts that he is seeking, in state court, to have the disciplinary actions overturned while here he seeks money damages based on the alleged retaliatory nature of the actions in this incident. Plaintiff's notice, filed on 8/01/08. Of course, this begs the question of how this claim might necessarily be deemed Heck-barred.

In Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994), an Indiana state prisoner brought a civil rights action under § 1983 for damages. Claiming that state and county officials violated his constitutional rights, he sought damages for improprieties in the investigation leading to his arrest, for the destruction of evidence, and for conduct during his trial ("illegal and unlawful voice identification procedure"). Convicted on voluntary manslaughter charges, and serving a fifteen year term, plaintiff did not seek injunctive relief or release from custody. The United States Supreme Court affirmed the Court of Appeal's dismissal of the complaint and held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order,

9

> declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has <u>not</u> been so invalidated is not cognizable under 1983.

Heck, 512 U.S. at 486, 114 S. Ct. at 2372. The Court expressly held that a cause of action for damages under § 1983 concerning a criminal conviction or sentence cannot exist unless the conviction or sentence has been invalidated, expunged or reversed. Id.

In Edwards v. Balisok, 520 U.S. 641, 117 S. Ct. 1584 (1997), the Supreme Court held that Heck applies to challenges to prison disciplinary hearings when the nature of the challenge to the procedures could be such as necessarily to imply the invalidity of the judgment. Edwards rejected the Ninth Circuit's holding in Gotcher v. Wood, 66 F.3d 1097, 1099 (9th Cir. 1995) that a claim challenging only the procedures employed in a disciplinary hearing is not barred by Heck. While it is not clear that plaintiff lost time credits as a result of this hearing, this appears to be one basis upon which he should not be allowed to proceed on this claim at this time.

In another incident, no. 6, involving a new proposed defendant, McGee, as well as defendants Mineau and Peebler, plaintiff alleges that property related to the instant action was intentionally lost or destroyed, and claims that his grievance regarding the incident was denied by Kramer on 12/06/06. SAC, pp. 18-19. In an incident no. 7, plaintiff makes additional allegations against defendant Groner, regarding plaintiff's having been placed in ad seg as a result of a rules violation report by Groner; a rehearing of the charge was held after the initial finding of guilt was overturned on appeal; plaintiff seeks to name a new defendant, Hayward, who found plaintiff guilty. Although another newly named defendant, Kramer, granted the appeal because defendant Groner did not attend the hearing, on 7/19/06, plaintiff also alleges that his grievance about the incident was denied by Kramer. Finally, plaintiff states, on 4/09/08, that he was placed in ad seg based on anonymous threats to his safety by general population inmates, the source of which plaintiff alleges were defendants, causing him to lose his job and much property, after which he

was transferred to CSP-Solano. SAC, pp. 19-20.

The Federal Rules of Civil Procedure provide that a party may amend his or her pleading "once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a). However, once an answer has been filed, a party may amend a pleading only by leave of court or by written consent of the adverse party. See Rule 15(a)(2). In this instance, plaintiff had already been proceeding on an amended complaint and at the time of filing the proposed second amended complaint four of the seven defendants named in the first amended complaint had answered. Although "[t]he court should freely give leave when justice so requires," under Rule 15(a)(2), this court has gone to extraordinary lengths to assist plaintiff in the serving of the first amended complaint, which has taken an inordinate length of time (although plaintiff contends that defendants' counsel is in large part responsible for that – see request for sanctions below). Moreover, as the four answering defendants assert in their opposition,[4] the amendment appears to be futile as not in compliance with 42 U.S.C. § 1997e, requiring exhaustion of the administrative process prior to commencing suit in this court. Opposition, filed on 8/27/08, p. 2.

Defendants are correct in conceding that while there is a presumption in favor of granting leave to amend under the applicable rule, 15(a), leave to amend may not be granted where such amendment (1) would prejudice the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile. Opp., p. 2, citing, inter alia, Eminence Capital LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003); Amerisource Bergen Corp. v. Dialysist West, Inc.,465 F.3d 946, 951 (9th Cir. 2006). This circuit accords the greatest weight to "the consideration of prejudice to the opposing party," the burden of the showing of prejudice resting on the opposing party. Eminence Capital, 316 F.3d at 1052.

---

[4] The remaining defendants named in the first amended complaint, filed their notice of joinder in opposition to the filing of the second amended complaint, on 9/24/08, upon the filing of their answer.

In this instance, as the court has already noted, to grant plaintiff leave to amend to proceed on the second amended complaint at this point would most definitely implicate the third factor, and as to the fourth factor, there is little question that as to this action, initially filed on 5/05/06, the new claims could not have been timely exhausted. McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002) (42 U.S.C. § 1997e(a) provides that no action shall be brought with respect to prison conditions *until* such administrative remedies as are available are exhausted). Plaintiff mistakenly believes that his having exhausted these claims administratively at the time that he filed his proposed second amended complaint is sufficient. Reply, p. 3. In his reply, plaintiff affirmatively demonstrates administrative exhaustion as to his claims relating to Incident no. 6 was exhausted by a third level appeal decision dated 3/26/07. Reply, p. 3 & Exh. A. As to Incident no. 7, he argues that because he received the injunctive relief he sought at the second level of review, he did not need to pursue his claims to the third level when he sought only money damages, relief unavailable through the CDCR grievance process. Reply, p. 3 & Exh. B. Although plaintiff does not cite the relevant authority for that proposition, the difficulty remains the same for plaintiff as to this incident. In other words, even assuming plaintiff could demonstrate administrative exhaustion by virtue of the relief he sought having been granted at the second level (see Brown v. Valoff, Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005)), that decision is dated 7/19/06, again beyond the 5/05/06, filing date of the instant action.

As to incident no. 5, which involves an event of which he was apparently at least aware as of 2/17/06, plaintiff does not explain why he could not have included the allegations related to this incident in the amended complaint filed in January of 2007. Thus his delay in doing so is undue. The court has also noted that the allegation could be Heck-barred. Plaintiff contends that at the time he filed the first amended complaint, he was in the process of resolving the underlying issues (presumably of the proposed second amended complaint) administratively, which while not specifically addressed to the issues involved in incident no. 5, appears to demonstrate, that as to this incident as well, plaintiff could not have exhausted his claims

administratively before filing this action.

Moreover, and dispositively, the exhaustive rendition of claims demonstrates that piling more and more claims on top of the myriad existing claims will make a trial on the complaint nearly impossible. At some point, the parameters of the claims going to trial or motion need to be fixed else the action becomes unmanageable. Plaintiff's request to proceed on the second amended complaint is denied.

Request for Sanctions

Plaintiff asks that sanctions be imposed upon the Attorney General and upon defendants' former counsel, Deputy Attorney General Todd Irby, for what he contends were defendants' counsel's efforts to harass, obstruct and delay plaintiff in the prosecution of this case in violation of Fed. R. Civ. P. 26, averring a failure to cooperate in discovery. Motion, filed on 7/11/08, p. 1. Plaintiff attaches a letter directed to Deputy Attorney General Irby, dated 12/10/07, wherein plaintiff seeks his assistance serving the then as yet unserved defendants: Butler, Parker, Groner and Mineau, to which DAG Irby responded, on 12/18/07, telling plaintiff that none of these individuals were employed any longer at FSP and that "neither I nor the prison are currently aware of their whereabouts," and declining to accept service on their behalf. Motion/declaration, pp. 1-2, Exhibits A & B. In a letter to DAG Irby, dated 1/11/08, and attached as Exh. C, plaintiff, who states he is enclosing a copy of a CSP-Folsom (FSP) staff roster for 1/10/08 (Exh. D), showing defendant Mineau on the roster for that day as well as enclosing proof that defendant Mineau was personally served at FSP 1/10/08, and which demonstrates that counsel provided false information (on 12/18/08) as to this defendant's whereabouts. Motion, p. 2. Plaintiff then notes the Order, filed on 5/20/08, wherein the undersigned directed defendants' counsel to query the CDCR for the whereabouts of the remaining unserved defendants Butler, Parker and Groner. Id.

Exh. E to plaintiff's motion/declaration is a copy of the 6/05/08 response to the court's order, wherein DAG Irby states that he had contacted D. Johnson at FSP who indicated

13

that he had been authorized to accept service of legal documents on defendant Butler's behalf at all relevant times. Counsel then spoke by telephone to defendants Parker and Groner retired from CDCR, each of whom agreed to permit the FSP litigation coordinator to accept service on their behalf. Motion, p. 2, Exh. E.

Plaintiff observes that as of 6/20/08, a different deputy attorney general was designated for service in this action and the court was asked to terminate the name of DAG Irby from the service list of this case. Motion, p. 2, Exh. F. Plaintiff contends that the dilatory tactics of defendants' counsel unnecessarily caused him to spend "considerable time and resources attempting to locate the above mentioned defendants," attaching as Exh. G, a letter from plaintiff, dated 7/19/07 (directed to the U.S. Marshal Service, seeking to know the cost for service of process); Exh. H, a letter from plaintiff, dated 8/16/07(directed to Esquire Deposition Services, again asking for the cost of serving the summons and complaints); and Exh. I, a letter dated 10/15/07(a letter from a legal assistant to the attorney for plaintiff in unrelated legal matters[5]–the assistant therein informs plaintiff that he has been informed by the FSP litigation coordinator that Butler, Groner, and Mineau have retired; he was apparently further informed by CDCR headquarters that CDCR did not know where Parker was). Motion, p. 3 & Exhs. G, H, I. In Exh. I, plaintiff was also told by the legal assistant for his attorney by the FSP litigation coordinator that he could not accept service for anyone not currently at FSP.

Plaintiff also asserts that he had to seek numerous and lengthy time extensions, which burdened the court, because of DAG Irby's alleged delaying tactics and he seeks unspecified monetary fines and repayment of all costs, again unspecified, that he incurred in attempting to serve defendants Butler, Groner, Parker and Mineau. Motion, p. 3. In his addendum, construed as a reply, plaintiff specifically seeks to be reimbursed ninety dollars ($90), the amount that plaintiff spent in order to serve defendants Butler, Parker and Groner (see Docket

---

[5] The attorney, Steven Sanders, (not the assistant) filed a letter on plaintiff's behalf with regard to the difficulties plaintiff was having in serving defendants. See Docket # 35.

# 53), following defendants' request for dismissal of the unserved defendants, filed on 7/23/08 (included with their opposition to plaintiff's motion for sanctions). Plaintiff lost this amount when he provided for service of these defendants, but the court denied his motion for an additional extension of time to serve the remaining defendants as moot, informing plaintiff that the undersigned had directed the U.S. Marshal to serve these defendants by Order, filed on 7/29/08. See, Order, filed on 8/14/08. Plaintiff provides supporting documentation demonstrating the expenditure of $90 to provide for personal service of the defendants at issue. Reply-Docket # 53, pp. 3-8. In his reply, plaintiff also asks that unspecified monetary sanctions be imposed for defendants' counsel's "wasting the Court's resources." Reply-Docket # 53, p. 2.

In opposition to plaintiff's motion, defendants' counsel contends that defendants have complied with the rules of discovery and have also complied with the court's order to locate the then as-yet unserved defendants for plaintiff to serve process. Opposition, p. 1. At the time of the filing of the opposition, on 7/23/08, the last three defendants that have since been served had yet to be served and defendants ask in this filing that plaintiff's motion for sanctions be denied and the unserved defendants dismissed, as the court had cautioned would occur in its Order, filed on 5/20/08. Opp., pp. 1-2. In that order, the court warned that these defendants would be dismissed if then-counsel for defendants could not provide a location for service of process for the unserved defendants or if after providing a location, plaintiff had not served the remaining defendants within sixty days of the 5/20/08 Order.

Plaintiff ascribes the blame to defendants' counsel for his having had to seek multiple extensions of time, averring that it was obstructionist tactics on counsel's part that precluded earlier service. On the other hand, plaintiff, who did not qualify for in forma pauperis status, was, indeed, responsible for service of process, a task rendered no doubt quite difficult by an incarcerated plaintiff, which the court has previously considered in granting plaintiff, who has shown diligent effort to serve all the defendants, lengthy extensions of time.

\\\\\

| | |
|---|---|
| 1 | Rule 37 authorizes "a wide range of sanctions" for a party's failure to comply with |
| 2 | discovery rules or court orders enforcing them. Wyle v. R.J. Reynolds Industries, Inc., 709 F.2d |
| 3 | 585, 589 (9th Cir. 1983). Penalizing a party "for dilatory conduct during discovery proceedings" |
| 4 | is discretionary. Bollow v. Federal Reserve Bank of San Francisco, 650 F.2d 1093, 1102 (9th |
| 5 | Cir. 1981) (citing Fed. R. Civ. P. 37(a)(4)). Professors Wright and Miller have opined: |

> Any failure to disclose, regardless of the reason for it, brings the sanctions of Rule 37 into play, although the reason for the failure is an important consideration in determining what sanction to impose. If the failure is because of inability to comply, rather than because of willfulness, bad faith, or any fault of the party, the action may not be dismissed, nor a default judgment given, and less severe sanctions are the most that should be invoked.

8A C. Wright & A. Miller, Federal Practice and Procedure, § 2284, at 620-22 (1994).

Rule 37 provides that in lieu of, or in addition to, imposing other sanctions,

> the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C).

"[I]f a failure to comply has occurred, it becomes incumbent upon the disobedient party to show that his failure is justified or that special circumstances would make an award of expenses unjust. Notes of the Advisory Committee on Rule 37." David v. Hooker, 560 F.2d 412, 419 (9th Cir. 1977).

In addition to Rule 37 sanctions, "[c]ourts are invested with inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp., 982 F.2d 363, 368 (9th Cir. 1992) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 2132 (1991)); accord Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir. 1995)

(recognizing inherent power to dismiss counterclaim for concealing discovery documents); <u>Winn v. Associated Press</u>, 903 F. Supp. 575, 580 (SDNY 1995) (imposing monetary sanctions for deliberately impeding discovery and willful noncompliance with document production).

> Under its "inherent powers," a district court may ... award sanctions in the form of attorneys' fees against a party or counsel who acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." <u>Primus Auto. Fin. Servs., Inc. v. Batarse</u>, 115 F.3d 644, 648 (9th Cir.1997) (discussing a sanction against an attorney) (citation omitted). Before awarding such sanctions, the court must make an express finding that the sanctioned party's behavior "constituted or was tantamount to bad faith." <u>Id</u>. (citation omitted). A party "demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." Id. at 649(internal quotation marks and citation omitted). The bad faith requirement ensures that the district court's exercise of its broad power is properly restrained, and "preserves a balance between protecting the court's integrity and encouraging meritorious arguments." Id. Additionally, the amount of monetary sanctions must be "reasonable." <u>Brown v. Baden (In re Yagman)</u>, 796 F.2d 1165, 1184 (9th Cir.), as amended by 803 F.2d 1085 (1986) (reviewing a Rule 11 sanction but announcing a standard applicable to other sanctions as well).

<u>Leon v. IDX Systems Corp</u>., 464 F.3d 951, 961 (9th Cir. 2006).

It is defendants' position that monetary discovery sanctions are not appropriate in this motion because plaintiff does not claim therein to have served any discovery requests or that defendants have failed to respond to such requests and plaintiff has not brought a motion to compel or prevailed on one. Opp., p. 3. While prevailing on a discovery motion might be a condition precedent to the imposition of monetary sanctions for discovery violations under Rule 37, the overlooks the court's inherent authority to impose sanctions for impeding the progress of litigation.

Here what is at issue is whether defendants' counsel in responding to plaintiff pro se's effort to locate unserved defendants acted willfully to impede the progress of this litigation. As noted above, it was plaintiff's responsibility to serve process upon the defendants. Moreover, even one of plaintiff's exhibits demonstrates that the office of his attorney in unrelated matters could not provide plaintiff with particularly helpful information in seeking to ascertain the

whereabouts of the then unserved defendants. In fact, the response by plaintiff's attorney's office somewhat mirrors the response provided by defendants' counsel prior to this court's order to counsel to query the CDCR for their location. Notwithstanding plaintiff's lack of in forma pauperis status, this court directed service of this action upon the last three defendants once counsel for defendants made arrangements for doing so in response to the court's order. In sum, it does appear that defendants' counsel was dilatory, and even less than diligent in trying to locate the unserved defendants until the court ordered counsel's involvement, and in the lack of diligence did not assist the court in managing its burdened docket, but counsel's initial response does not appear to have been one made in bad faith. The court finds that sanctions in this instance are not warranted.

Motion to Vacate Deposition Notice

Plaintiff objects to the notice defendants have served upon him for taking his deposition on 5/07/09, at 10:00 a.m., at CSP-Solano, where he is now housed. Plaintiff includes a copy of the notice which states that the examination "will continue day to day until completed." Motion (docket # 71), pp. 1, 4.

Plaintiff objects to the notice because defendants did not obtain leave of court, pursuant to Fed. R. Civ. P. 30(a)(2)(B), for deposing those in prison. This objection is not well-taken. The Discovery Order, filed on 1/17/08, directed that pursuant to Fed. R. Civ. P. 30(a), defendants could depose plaintiff or any other witness confined in prison so long as defendants served notice, pursuant to Fed. R. Civ. P. 30(b)(1), on all parties before any such deposition at least fourteen days in advance of the date of the deposition.

Plaintiff further objects to any deposition that exceeds the limitation set forth under Fed. R. Civ. P. 30(d)(1), which states, in part, that "a deposition is limited to 1 day of 7 hours," unless the court orders, or there is a stipulation, otherwise. Notwithstanding what the notice states, defendants are not permitted to exceed the limit set forth under Fed. R. Civ. P. 30(d)(1), without seeking the court's permission, which they have not done. Therefore, it is

18

unnecessary for this court to vacate the notice, which was served on 3/17/09 (providing more than the notice period this court required, per the Discovery Order). The motion will be denied.

Request for Subpoena

Plaintiff has sent a letter to the Court Clerk requesting the issuance of a subpoena for the production of documents to be served upon the CDCR Secretary, Matthew Cate. Plaintiff has not identified what documents he seeks from this third party or the basis for any subpoena to issue from this court to this individual. The Clerk will be directed to provide plaintiff with a blank subpoena form which plaintiff is responsible for completing and serving.

Accordingly, IT IS ORDERED that:

1. Plaintiff's 7/11/08 (docket # 44), motion for sanctions for defendants' alleged failure to cooperate in discovery, is denied;

2. As to plaintiff's request for issuance of a subpoena for production of documents for service upon Matthew Cates, Secretary of California Department of Corrections and Rehabilitation (CDCR), filed on 3/23/09 (# 70), the Clerk of the Court is directed only to provide plaintiff with a blank subpoena form;

3. Plaintiff's motion to vacate the taking of his deposition, filed on 3/24/09 (# 71), is denied;

4. Plaintiff's request to proceed upon a second amended complaint, filed on 6/24/08 (docket # 42), is denied, and the proposed second amended complaint, filed on 6/25/08 (# 41), is ordered stricken from the docket.

DATED: April 10, 2009

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
abed0991.ofr